JiDUFRESNE, Judge.
This is an appeal by Peter Apostólos and his wife Mary Sandra, plaintiffs-appellants, from a judgment dismissing their malpractice claim against the C.P.A. firm of Guenther, Guenther & Gillane (GG & G), and two of its partners, defendants-appellees. Because we find neither legal nor manifest factual error in the decision of the trial judge, we affirm the judgement.
The undisputed factual background of this case is as follows. Beginning in 1988, Apos-tólos employed GG & G to do his income taxes, and for most of this period he was able to avoid any tax liability by use of various tax credits derived from restoring historic buildings. By 1992, he had accumulated some $17,000.00 in such credits and had used $3,000.00 of that amount in that year to eliminate all taxes, leaving him with $14,-000.00 in credits to carry forward. During this same period, he had invested in an eight unit condominium project and was in the process of selling these units. He was also at this time renovating another historical bbuilding which he anticipated would generate another $60,000.00 in tax credits for 1993. In May of 1993, he called the accounting firm to arrange a meeting to discuss his tax situation, particularly in regard to profits anticipated from the condominium project. That meeting was held on May 28,1993.
Prior to the meeting, Apostólos had been moving forward with sales of the various units in the project without having sought any tax advice. It was shown at trial that by the time of the meeting he had sold three of the eight units, had a signed purchase agreement in hand for three others, had decided to trade one for another property, and was going to keep one for himself. He testified that the purchase agreement fell through later, but also stated that of the three units involved in that transaction, he had decided to sell one of them regardless of the tax consequences, and thus the advice which he was seeking at the meeting only related to sale of the remaining two units. He further explained that the proceeds of the first four sales had gone to pay the mortgage and expenses, the exchange would be tax neutral, as would the unit he intended to keep, and *510 therefore the only taxable profit with which he was concerned would come from sale of the last two units.
Apostólos met with two of the defendants, Hall Townsend and William E. Gillane (who died prior to trial), for an hour and a half on May 28, 1993.. It was generally agreed at trial that although two peripheral issues were discussed the main focus of the meeting was the tax consequences of selling the last two units. Based on a projected profit of between $250,000.00 and $350,000.00 on the condominium venture, Gillane indicated that Apostólos would be in the 31% bracket for income taxes, butjjthat the 28% bracket for capital gains would probably be applicable to the realized profits. Apostólos was also told that what is known as the “Clinton tax bill of 1993” was being debated in Congress, and was advised not to sell the units until that bill was signed into law and any changes to the tax code became known. The bill was signed in August, 1993, and Apostólos, without further consulting the accountants, sold the last two units in late August and September of that year.
The following spring, GG & G prepared plaintiffs tax returns, and informed him that he owed $54,000.00 in federal taxes, and an additional $6,000.00 in state taxes. Apostólos testified that he was shocked at the tax bills because he anticipated that taxes for 1993, would be offset by the $14,000.00 carry over tax credit and the new $60,000.00 credit, which was created by his ongoing historic restoration. He also said that he had put all of the profits from the condominium project back into the historic project, and thus did not have the funds available to pay the taxes without selling the condominium unit that he intended to keep for himself.
Apostólos thereupon brought suit against GG & G, Gillane, and Townsend, alleging that he was improperly informed of the tax ramifications of selling the two condominium units and had suffered losses because of his reliance on their bad advice. In response, GG & G reconvened for payment of $1,300.00 in accounting fees, as well as attorney fees. After a bench trial, the trial judge entered judgment against Apostólos on his main demand, and in favor of GG & G in their reconventional demand. Apostólos now appeals both parts of the judgment.
The crux of this suit is what Apostólos was told or not told by Gillane kand Townsend at the May 28, 1993, meeting. Apostólos testified that he left the meeting with the firm conviction that his tax credits would wash out any tax liability that would result from sale of the two condominium units. He acknowledged that there was a discussion about the 31% income tax rate and the 28% capital gains rate, as well as advice to delay the sales until after the Clinton tax bill was passed. He asserted that he followed the advice not to sell before passage of the new tax law, but also admitted that he did not contact the accountants after passage to discuss any effects that the new law might have had on sale of the two units. He denied ever being informed that the minimum alternative tax provisions of the tax code restricted the use of his type of tax credits to a certain maximum for high income filers. He said that following his conversation with the defendants, he fully believed that he could use the entire $74,000.00 in credits to offset his taxes. As it turned out only about $6,000.00 of the credits were usable in 1993.
Townsend gave a different version of what transpired at the meeting. His recollection was that there was indeed a discussion about selling the two units, but that no calculations of what taxes might ultimately be owning were made because Apostólos did not have with him all of the information about his total financial situation which would have been needed to make such a calculation. He denied that either he or Gillane had advised him that all of the tax credits could be used to off-set all 1993 taxes. He also said that because of the upcoming revisions to the tax code, Apostólos was advised not to sell the units yet, but rather to wait and see what changes might be made, especially in regard to the availability of the historic restoration credits. Townsend said that he assumed that Apostólos would fchave contacted him or Gillane after the tax bill was enacted, but prior to selling the units, to get advice on the ramifications of the sale under the new law, but that never happened. He also noted that by the time of the meeting, the transactions *511 already made by Apostólos on the condominium project carried tax liability of about $26,-000.00, and that if the sale of the last two units had been deferred until 1994, the difference in the total tax liability would have been about $10,000.00.
Mr. Albert J. Derbes, III, also a C.P.A., testified as an expert for plaintiffs. His opinion was that if Apostólos came to the meeting seeking information about the tax consequences of selling the last two units, Townsend and Gillane should have “run the numbers” and advised him that under the then existing law the alternative minimum tax provisions of the tax code would limit his use of the accumulated tax credits, and failure to so respond would be contrary to the professional guidelines issued by the American Institute of Certified Public Accountants.. He admitted, however, that if the discussion were more general and if the accountants had advised him to do nothing until the new Clinton tax was finalized, and then get back in touch with them before selling the units, then that would not have constituted malpractice on their part.
In his reasons for judgment the trial judge noted that the versions of the meeting given by Apostólos and Townsend varied, and he implicitly found Townsend’s version more reliable. Because the basis for the judgment was this credibility determination, the manifest error standard is applicable to this appeal, Rosell v. ESCO, 549 So.2d 840 (La.1989). Under that standard, the inquiry is not what factual or credibility determinations might have been made by the appellate court had it been ^sitting as the trial court, but rather whether such determinations made by the trier of fact are reasonable in light of the entire record, id.
In the present case, it was not disputed that when Apostólos first sought tax advice, he had already taken actions which created a $26,000.00 tax liability. It was also undisputed that at the meeting a profit figure was discussed of between $250,000.00 and $350,000.00, and that Apostólos was told that the income tax on these amounts would be 31%, or more likely 28% if claimed as a capital gain. Apostólos did not deny that he was told about the potential 28-31% tax liability, but said that he was further told by the accountants that his tax credits would be sufficient to entirely off-set this liability, and thus he proceeded with the sales of the two units. On the other hand, Townsend said that their advice was to wait and see what changes might be forthcoming in the pending tax bill before selling. He denied that Apostólos had been told that the tax credits would cancel out the liability. The trier of fact credited Townsend’s testimony over that of Apostólos, and considering the entire record of this matter, we can not say that this determination was manifestly erroneous being based as it was on a reasonable evaluation of the credibility of the witnesses. Because the judgment was based on this credibility determination, we must affirm that judgment.
Apostólos also asserts as error here a ruling in limine precluding him from presenting evidence of damages allegedly suffered because of the actions of the defendants. Because we have affirmed the judgment in favor of those defendants as to liability, this argument as to evidence of alleged damages is moot.
The final issue is whether the judgment in favor of defendants in their breconventional demand of $1,300.00 for payment for tax services was error. While appellant contests this fee, he does not assert that the amount was not properly set forth or that the invoiced work was not performed. Instead, he argues that having allegedly been given bad advice by the accountants which resulted in financial damages, he should not in turn be billed for preparation of his tax forms by these same accountants. However, as we have affirmed the trial court judgment exonerating the defendants from liability in this matter, appellant’s equitable rationale for not having to pay for these services is also moot.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.

AFFIRMED.